United States District Court
for the
Southern District of Florida

| Anat Gordon, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-22677-Civ-Scola |
| Sandals Resorts International, Ltd., | ) |
| Unique Vacations, Inc., | |
| Defendants. | |

## Order on Motion to Dismiss

The Plaintiff Anat Gordon filed suit against Sandals Resorts International, Ltd. ("Sandals") and Unique Vacations, Inc. ("UVI") for engaging in unfair and deceptive trade practices. Now before the Court is the Defendant UVI's motion to dismiss (ECF No. 10). Sandals has fully joined and adopted the grounds for dismissal raised in UVI's motion to dismiss. (ECF No. 11.) For the reasons set forth in this Order, the Court **grants** the motion to dismiss (**ECF No. 10**).

### 1. Relevant Factual Background

Gordon filed a nationwide class action complaint against the Defendants alleging that they engaged in deceptive and unfair practices in violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and unjust enrichment under Florida law. Sandals is "the owner and operator of [nineteen] resorts located throughout the Caribbean." (ECF No. 1 at ¶ 12.) "UVI is the sales, marketing, and public relations arm of Sandals." (*Id.* at ¶ 13.)

The complaint specifically alleges that the Defendants market their Travel Protection Plans ("TPP") on the sandals.com website as an independently underwritten travel insurance policy offered by third parties. (*Id.* at ¶ 5.) The way the TPPs are marketed would lead a reasonable consumer to believe that they are contracting directly with the insurance provider to purchase the Travel Insurance Policy, and that the Defendants are passing the premiums through to the third-party insurance company. (*Id.* at ¶ 6.) In reality, the Defendants received an undisclosed kickback from the insurance providers for each policy sold through the TPPs. (*Id.* at ¶ 7.)

Gordon booked a stay at the Defendants' resorts four times, and on two of those occasions, she purchased a TPP. (ECF No. 10 at 3.) In both of those instances, she booked a vacation at the resort in Turks & Caicos. (*Id.*) The second vacation that she booked with TPP insurance was scheduled to begin on November 11, 2019, which is after she filed this lawsuit. Plaintiff canceled her

upcoming reservation, and the Defendants gave her a full refund for the TPP insurance. (*Id.* at 7.)

Each time that the Plaintiff purchased a TPP, booked a hotel reservation, or paid for her stay, she was presented with terms & conditions that included a forum selection clause. (ECF No. 10 at 4.) The pertinent part of the forum selection clause reads:

> **17.   FORUM SELECTION AND CHOICE OF LAW:**
> …
> **B. CLAIMS WHICH INCLUDE HOTEL AND/OR SANDALS RESORTS INTERNATIONAL LIMITED.** THE FOREGOING IN PARAGRAPH 17.A. NOTWITHSTANDING, ANY Claims whatsoever arising from, in connection with, or incidental to any personal injury, illness or death, that include any claim whatsoever against sandals resorts international limited, or the hotel, hotel management company, and/or their affiliates, subsidiaries, directors, officers, or employees, and to which claim unique travel is also a party, shall be litigated solely and exclusively in the courts of the country in which the hotel is physically located.

(*Id.*) According to UVI, Gordon received the terms & conditions containing this forum selection clause at least thirteen times. (*Id.* at 5.)

Additionally, each time she stayed at the hotel, she was provided with an On Resort Guest Registration that contained the following forum selection and choice of law provision:

> **8. Forum Selection and Choice of Law.** The undersigned Guest(s) HEREBY KNOWINGLY AND VOLUNTARILY AGREES that any and all claims that each such Guest may have against Sandals Resorts International, Ltd., the hotel, hotel management company, and/or their partent corporation, affiliates, agents and representatives in connection with or in any way incident or related to the undersigned Guest's (of Guests') stay at the hotel/resort, <u>shall be governed solely by the laws of Turks And Caicos as the exclusive choice of law, and further that the courts of Turks And Caicos shall be the exclusive venue/forum for any proceedings, claims, or litigation whatsoever.</u>

(*Id.* at 6.) She signed and assented to this forum selection and choice of law provision all three times that she stayed at the Turks and Caicos ("TCI") resort. (*Id.*)

## 2. Legal Standard

The "appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Texas*, 134 S. Ct. 568, 580 (2013). Ordinarily, to obtain dismissal based on *forum non conveniens*, the moving party must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014). In analyzing these factors, a court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff," *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (Altonaga, J.), but "may consider matters outside the pleadings." *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317,1320 (S.D. Fla. 2000) (Gold, J.); *see also Atl. Marine*, 134 S. Ct. at 581 ("In the typical case not involving a forum-selection clause, a district court . . . must evaluate both the convenience of the parties and various public-interest considerations.").

"When faced with such a motion based on a valid forum-selection clause, however, the calculus is substantially adjusted to recognize that such a clause should be 'given controlling weight in all but the most exceptional cases.'" *Turner v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 7:14–CV–1244–LSC, 2015 WL 225495, at *4 (N.D. Ala. Jan. 16, 2015) (quoting *Atl. Marine*, 134 S. Ct. at 581). "[T]he plaintiff's choice of forum merits no weight." *Atl. Marine*, 134 S. Ct. at 581. "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*. Moreover, in evaluating a motion based on a forum-selection clause, a court should "not consider arguments about the parties' private interests." *Id*. at 582. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id*. "As a consequence, a district court may consider arguments about public-interest factors only." *Id*. Because "these factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual circumstances." *Id*.

## 3. Analysis

The Plaintiffs argue that the forum selection clause is invalid, that Gordon's claims are outside of the scope of the forum selection clause, and that the *forum non conveniens* factors do not warrant dismissal. The Court will consider each argument in turn.

### A. The parties agreed to a valid and enforceable forum-selection clause.

"Forum selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). "A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.*

#### a. Fraud or overreaching

"In order for a forum selection clause to be invalidated on the basis of the first factor, fraud or overreaching, a plaintiff must specifically allege that the clause was included in the contract at issue because of fraud." *Rucker v. Oasis Legal Finance, LLC*, 632 F.3d 1231, 1236 (11th Cir. 2011). Gordon does not contend that the contract's formation was induced by fraud, and therefore the first factor does not support non-enforcement of the forum selection clause. The second factor also does not support non-enforcement.

#### b. Inconvenience or unfairness

To invalidate a contract on the second ground, "a plaintiff must show that litigation in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be *deprived of his day in court.*" *Id.* at 1237. Gordon has not made this showing. As a New York resident, she would need to fly back and forth to Florida as well as TCI. Therefore the second factor does not render the forum selection clause unenforceable.

#### c. Deprivation of a Remedy

Gordon argues that TCI laws do not provide her with a remedy comparable to FDUTPA. She contends that TCI would deprive her of a remedy because TCI's consumer protection laws do not have a private right of action for damages and that TCI prohibits contingency fees and therefore she could not afford an attorney capable of defending a nationwide class action.

The Eleventh Circuit has held that it "will not invalidate choice clauses…simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998). "Instead, we will declare unenforceable choice clauses only when the remedies available in the chosen forum are so inadequate that enforcement would be

fundamentally unfair." *Id.* A forum is considered adequate if it "provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiff's injuries." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2001).

Gordon has presented no evidence that its remedy would be "altogether lost" in the instant action, and "the possibility of Plaintiff being deprived of some relief is not sufficient to find that the [foreign] forum is inadequate." *Lisa S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1238 (S.D. Fla. 2006) (Moore, J.) (concluding that Guatemala is an adequate forum even though the plaintiff could not assert its RICO claim because it would not be deprived of all remedies). Because Gordon can litigate her claim and seek redress through the TCI judicial system, she has not shown that enforcement of the otherwise valid forum selection clause would deprive her of a remedy. (ECF No. 10-2 at ¶ 27.) Moreover, United States Magistrate Judge Torres recently found that the Turks and Caicos provides an adequate alternative forum for the plaintiffs to bring a FDUPTA claim because the plaintiffs did not show that they would be "deprived of any remedy" or "treated unfairly" in the Turks and Caicos. *Regent Grant Management Limited v. Trust Hospitality LLC*, 2019 WL 1112553, at *11 (S.D. Fla. Jan. 9, 2019) (Torres, J.) (case voluntarily dismissed before Judge Williams adopted R&R).

With regards to Gordon's second argument, the unavailability of contingency fees does not invalidate a forum selection clause even if their unavailability would make it impossible for Gordon to bring a class action. *See Giglio v. Sub. S.n.c v. Carnival Corp*, 2012 WL 4477504, at *8 (S.D. Fla. Sept. 26, 2012) (Rosenbaum, J.) (collecting cases) ("Decisions in this district and elsewhere have found that the lack of class action procedures in a forum does not render that forum inadequate."), *aff'd*, 523 F. App'x 651 (11th Cir. 2013).

### d. Public policy

UVI argues that the enforcement of the clause would contravene public policy and therefore the clause should be invalidated. It cites to *Davis v. Oasis Legal Finance Operating Company, LLC* and argues that *Davis* compels invalidating the forum selection clause. 936 F.3d 1174 (11th Cir. 2019). In *Davis*, the plaintiffs filed a class action complaint against lenders alleging that the loan agreements violated Georgia's Payday Lending Act, the Industrial Loan Act, and usury laws. *Id.* at 1177. The Court found the forum selection clause to be contrary to Georgia public policy. In doing so, it cited to an explicit prohibition on out-of-state forum selection clauses in Georgia's Payday Lending Act ("PLA") and to a subsequent Georgia Supreme Court case ruling that "the PLA established a clear public policy against payday lenders that have attempted to skirt the laws of Georgia by use of forum selection clauses." *Id.* at 1179 (citing

*W. Sky Fin., LLC v. Georgia*, 793 S.E.2d 357, 363 (Ga. 2016)). The Eleventh Circuit subsequently held that based on the Court's review, "Georgia statutes establish a clear public policy against out-of-state lenders using forum selection clauses to avoid litigation in Georgia courts." *Davis*, 936 F.3d at 1181; *see also Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1069 (11th Cir. 1987). The Eleventh Circuit further explained that it is not bound by its prior opinion in *Rucker v. Oasis Legal Finance*, 632 F.3d 1231, 1238 (11th Cir. 2011), where the Court upheld an identical forum selection clause under Alabama law. *Davis*, 936 F.3d at 1181 n. 5. "The decision to invalidate the forum selection clause depended entirely on Georgia law." *Id.* Likewise, the decision here will depend on whether Florida has established a clear policy against the use of forum selection clauses to avoid the litigation of FDUPTA claims in Florida courts.

Florida has a muddled public policy regarding whether a forum selection clause should be enforced against a plaintiff bringing a FDUPTA claim. Unlike the Georgia Payday Lending Act, FDUPTA is silent on the issue of forum selection clauses. Fla. Stat. § 501.201, *et seq.* The Florida courts have conflicting holdings regarding when and if a forum selection clause is enforceable against a FDUPTA claim. In *Management Computer Controls*, the Florida appellate court held that the venue clause could not be applied to the FDUPTA claim because "[t]he use of the venue clause as a defense to the statutory claim in this case would undermine the effectiveness of the statute." 743 So. 2d 627, 632 (Fla. 1st DCA 1999). Since the unfair trade claim was "severable from all the remaining claims" and "it [did] not arise out of the contract," the court concluded that the FDUPTA claim was beyond the scope of the venue clause. *Id.* Subsequent cases have held forum selection clauses to be valid, and they have distinguished *Management Computer Controls* on the basis that, unlike the claims in *Management*, the claims arose from the contract. *See World Vacation Travel, S.A. v. Brooker*, 799 So. 2d 410, 412 (Fla. 3d DCA 2001) (the claims are not severable, the claims arise out of the agreement and "there is no public policy against the contracting parties designating the home state of one of two corporations as the forum for ensuing litigation."); *SAI Ins. Agency, Inc. v. Applied Systems, Inc.*, 858 So. 2d 401, 403 (Fla. 1st DCA 2003) (distinguishing *Management Computer Controls* and "declin[ing] to construct a rule of public policy that would completely abrogate language selected by the parties to a contract."); *see also, Contractor's Management Systems of NH, Inc. v. Acree Air Conditioning, Inc.*, 799 So. 2d 320 (Fla. 2d DCA 2001) (the claim does not arise out of the agreement, and therefore the forum selection clause does not apply).

In 2004, a Florida appellate court expanded the public policy reasoning from *Management Computer Controls*. *See America Online, Inc. v. Pasieka*, 870 So. 2d 170, 171 (Fla. 1st DCA 2004). That court ruled that the class action

FDUPTA claim was not subject to the forum selection clause, "as that would undermine the effectiveness and purpose of the statute." *Id.* at 171. The court distinguished *Pasieka* from the previous line of cases on the basis that it was a class action. It recognized that "*Management Computer* did not establish an absolute rule against enforcing forum selection clauses in connection with FDUTPA claims." *Id.* Because *Pasieka* involved a class action and the unavailability of the Florida remedy in another state, "the policy concerns recognized in Management Computer…militate against enforcement of the clause here." *Id.* But this policy has not been consistently articulated by the Florida courts. Another Florida court upheld the same forum selection clause as the one from *Pasieka* and did not discuss policy concerns specific to class actions. *America Online, Inc. v. Booker*, 781 So. 2d 423, 424 (Fla. 3d DCA 2001). That court decided that the choice of forum clause is valid and enforceable even though the chosen forum does not have a mechanism for class actions and parties would have to litigate individual cases in Virginia small claims court. *Id.* The court stated that "forum selection clauses enhance contractual and economic predictability, while conserving judicial resources and benefitting commercial entities as well as consumers" and further that "[t]o promote these policy goals, Florida courts are directed to give effect to agreements on forum selection in order 'to recognize the legitimate expectations of contracting parties.'" *Id.* at 424-25 (citing *Marique v. Fabbri*, 493 So. 2d 437, 440 (Fla. 1986)).

"Public policy is an amorphous concept … Accordingly, it has been held that, the delicate and undefined power of courts to declare a contract void as contravening public policy should be exercised with great caution." *Davis v. Oasis Legal Finance Operating Company, LLC*, 936 F.3d 1174, 1178 (11th Cir. 2019). Unlike the Georgia public policy in *Davis* which was "built on a solid foundation," the Florida public policy is not clear and the courts articulate conflicting policies regarding the application of forum selection clauses to FDUPTA claims and class action claims. *Id.* Therefore, the Court declines to find that the enforcement of the forum selection clause would contravene Florida public policy.

### B. Gordon's claims fall within the scope of the forum selection clause.

Gordon argues that her claims fall outside the scope of the forum selection clause. (ECF No. 15 at 7-10.) Specifically, she argues that the language "any and all claims that each such Guest may have…in connection with or in any way incident or related to the undersigned Guest's (or Guests') stay at the hotel/resort" does not include the FDUTPA and unjust enrichment claims because they are not related to Gordon's stay. (ECF No. 15 at 8.) She also argues that the language "any claims whatsoever arising from, in connection with, or

incidental to any personal injury, illness, or death, that include any claim whatsoever against sandals..." means that the forum selection clause only applies to personal injury claims. (ECF No. 15 at 7.)

First, Gordon's trip insurance purchases to insure her stay is "in connection with or in any way incident or related to" her stay at the hotel and thus falls within the scope of the clause. *See Phillips v. NCL Corp. Ltd.*, 2019 WL 2288987 (S.D. Fla. May 29, 2019) (Scola, J.) (holding that the cruise's FDUTPA and unjust enrichment claims based on receiving undisclosed commissions related to Plaintiff's purchase of trip insurance fell within the scope of the arbitration clause, which required claims "relating to or in any way arising out of or connected with this Contract or Guest's cruise" to be resolved through binding arbitration).

Second, the Court need not decide whether the forum selection clause from the terms & conditions applies to non-personal injury claims. Gordon bought TPP and was not presented with the forum selection clause from the On Resort Guest Registration only one time. (ECF No. 10 at 7.) On that occasion, Gordon was refunded in full for her trip insurance purchase. That claim is therefore moot. *See Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012) (the plaintiff could not represent a class pursuing a FDUPTA claim because the named plaintiff has no actual damages).

### C. The forum selection clause requires the dismissal of this action under a forum non conveniens analysis.

Since the Court finds that the forum-selection clause is valid and enforceable, the modified analysis in *Atlantic Marine* applies. The first part of this analysis requires the Court to determine whether an adequate alternative forum exists. *McArthur* 607 Fed. Appx. at 848; *see also Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001). To be available, a foreign forum must be able to assert jurisdiction over the matter whose transfer is sought. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 578 F.3d 1283, 1289–90 (11th Cir. 2009). A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n. 22 (1981). Here, VMI and Sandals consent to jurisdiction in TCI, and as discussed *supra*, TCI is a jurisdiction that could provide relief for Gordon's claims. Accordingly, the Court finds that TCI is both available and adequate as an alternative forum.

The Court notes that the private factors, under the *Atlantic Marine* analysis, are deemed to weigh in favor of dismissal. A court evaluating a defendant's *forum non conveniens* motion based on a forum-selection clause

"should not consider arguments about the parties' private interest" because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine*, 571 U.S. at 64. "A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.*

Next, the Court must consider the relevant public interest factors to determine whether dismissal is appropriate. The public interest factors to be considered include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [and] the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law." *Piper Aircraft*, 454 U.S. at 241 n. 6; *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009).

First, the Court considers whether administrative difficulties flowing from court congestion weigh in favor of dismissal. The Court notes that the Southern District of Florida has one of the busiest dockets in the country, and this factor, thus weighs in favor of dismissal. Nonetheless, this factor generally does not warrant significant consideration in the *forum non conveniens* analysis, and the Court does not accord it much weight. *See Morse v. Sun Int'l Hotels Ltd.*, No. 98–7451–Civ, 2001 WL 34874967, at *6 (S.D. Fla., Feb. 26, 2001) (Jordan, J.). Additionally, neither party has presented evidence with regard to administrative difficulties that may exist in TCI, further undermining the importance of this factor.

Second, the Court finds that the local interest in adjudicating this controversy weighs in favor of dismissal to TCI. The Court first acknowledges the general proposition that a general interest exists in allowing United States citizens to bring suit in a United States court. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101–02 (11th Cir. 2004). However, the events that are the subject of this suit did not occur in Florida. The Plaintiff is from New York, and the contract was signed in TCI. That forum is highly dependent on tourism and thus, has a strong interest in adjudicating claims that arose from the tourism activities of the Plaintiffs and their decedents. *See Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1380 (S.D. Fla. 2011) (Ungaro, J.). The sole connection to Florida is that UVI's personal place of business is in Florida, and that future unnamed class action participants may be Florida residents. *See Beaman,* 790 F. Supp. 2d at 1380 ("Florida's interest is minimal, due to its attenuated connection with the circumstances of this case;

the only apparent connection to Florida is a single defendant's incorporation in this state."). Therefore, this factor weighs in favor of dismissal.

Third, TCI law governs the action since Gordon signed an enforceable choice of law provision that governs this claim. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306, 311 (Fla. 2000) ("Generally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy."). Therefore, this factor, too, weighs in favor of dismissal.

Finally, the Court concludes that dismissal is appropriate because the Plaintiffs can reinstate their lawsuit in TCI without undue inconvenience or prejudice. *See Leon*, 251 F.3d at 1310-11. The Defendants have specifically consented to UVI's exercise of jurisdiction. (ECF No. 10 at 10.) Thus, the Plaintiffs have failed to sufficiently carry their burden to overcome the "practical result . . . that forum-selection clauses should control except in unusual circumstances." *Atl. Marine*, 134 S. Ct. at 582. Accordingly, under the *forum non conveniens* analysis articulated in *Atlantic Marine*, the Court finds this case should be dismissed.

### D. Conclusion

In sum, the Court **grants** the Defendant's motion to dismiss (**ECF No. 10**). The case is dismissed without prejudice and with leave to refile in TCI. The Court denies all pending motions as moot and directs the Clerk to **close** this case.

**Done and ordered** in chambers, at Miami, Florida, on November 4, 2019.

_____
Robert N. Scola, Jr.
United States District Judge